## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| *In re* | Chapter 7 |
| HIGH MESA, INC., *et al.*, | Case No. 20-30602 |
| Debtors. | (Jointly Administered) |
| CHRISTOPHER R. MURRAY, as Chapter 7 Trustee for the Estates of Debtors High Mesa, Inc., et al., | |
| Plaintiff, | |
| v. | Adv. Proc. No. 22-3011 |
| MICHAEL ELLIS; HARLAN CHAPPELLE; CHAPPY ENERGY, LLC; BCE-MESA HOLDINGS, LLC; BCE-AMH HOLDINGS, LLC; MARK STONER; WILLIAM MCMULLEN; ANDREW KOEHLER; AND JEFFREY HOSTETTLER, | |
| Defendants. | |

### DEFENDANTS CHAPPELLE, ELLIS, AND CHAPPY ENERGY, LLC'S
### MOTION TO DISMISS UNDER RULE 12(b)(6)

This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response on or before **May 24, 2022**, as stipulated by the parties and approved by the Court at ECF No. 11. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the Court may consider evidence at the hearing and may decide the motion at the hearing.

**Represented parties should act through their attorney.**

There will be a hearing on this motion on **July 11, 2022 at 1:30 p.m. central time** in person at **Courtroom 404, 515 Rusk, Houston, TX 77002** or remotely via GoToMeetings at **http://www.gotomeet.me/JudgeIsgur, or Phone at 832-917-1510, access code:  954554.**

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 2

        A.    The Complaint's Factual Allegations ..................................................... 2

              1.    High Mesa's Business Structure and Board Composition.......................... 2

              2.    The Unconsummated Interstate Transaction and Rescue Financing ......... 3

              3.    The Asset Sales and Subsequent Repayments ............................................ 4

        B.    Procedural History ................................................................................. 5

III.    LEGAL STANDARD.......................................................................................... 7

IV.     ARGUMENT ...................................................................................................... 8

        A.    Count 1 of the Complaint fails to state a claim against Chappelle and Ellis for
              breach of fiduciary duty. ...................................................................... 8

              1.    The Trustee lacks standing to bring derivative claims on behalf of
                    Delaware limited liability companies or limited partnerships. ................. 8

              2.    The Complaint fails to establish that Chappelle or Ellis owed fiduciary
                    duties to HMH GP, HMH LP, HMS, or AM Idaho. ................................. 9

              3.    The Complaint fails to allege any breach of the duty of care. ................... 9

              4.    The Complaint's allegations show that Chappelle and Ellis did not breach
                    the duty of loyalty. ................................................................................ 13

        B.    Count 2 of the Complaint fails to state a claim that Chappelle or Ellis aided and
              abetted any breach of fiduciary duty.................................................... 14

              1.    Texas law governs Count 2 of the Complaint.......................................... 14

              2.    Texas law does not recognize claims for aiding abetting breaches of
                    fiduciary duty. ...................................................................................... 15

              3.    Alternatively, Count 2 of the Complaint does not allege that either
                    Chappelle or Ellis acted with knowledge or substantially assisted a breach
                    of fiduciary duty.................................................................................... 16

        C.    Representations in the Emergency Sale Motion contradict the Complaint's
              allegations that High Mesa sold the 2019 Idaho Assets to Weiser-Brown for less
              than reasonably equivalent value. ........................................................ 18

        D.    Counts 3–6 of the Complaint fail to allege claims that the Rescue Financing
              Repayments were fraudulent transfers.................................................. 22

              1.    The fraudulent transfer claims in Counts 3 to 6 of the Complaint fail to
                    state a claim.......................................................................................... 22

i

2. The actual fraudulent transfer claims in Counts 3 and 5 of the Complaint do not meet stringent Rule 9(b) standards. ................................................ 25

E. Texas law forecloses the unjust enrichment claim in Count 7 of the Complaint. 26

F. No claims exist for the Court to disallow under Count 8 of the Complaint. ........ 27

G. Amendment of the Complaint would be futile. .................................................. 27

V. CONCLUSION ............................................................................................................... 28

# TABLE OF AUTHORITIES

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*77 Charters, Inc. v. Gould*,
   2020 WL 2520272 .................................................................................17

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) .......................................................................12

*Asarco LLC v. Americas Mining Corp.*,
   396 B.R. 278 (S.D. Tex. 2008) ...............................................................23

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................7

*Bank of Am., N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ...................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................7

*Bomarko, Inc. v. Int'l Telecharge, Inc.*,
   794 A.2d 1161 (Del. Ch. 1999) ..............................................................13

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) .......................................................................10

*Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*,
   179 F.3d 197 (5th Cir. 1999) .................................................................20

*Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp)*,
   6 F.3d 1119 (5th Cir. 1993), abrogated on other grounds by *Tex. Truck Ins.
   Agency, Inc. v. Cure (In re Dunham)*, 110 F.3d 286 (5th Cir. 1997)......................22

*Cede & Co. v. Technicolor, Inc.*,
   634 A.2d 345 (Del. 1993), *decision modified on reargument*, 636 A.2d 956
   (Del. 1994) .............................................................................................12

*In re Cent. Ill. Energy Co-op v. Camille's of Canton, Inc.*,
   2011 WL 3666611 (Bankr. C.D. Ill. Aug. 22, 2011)............................24

*Cooke v. Oolie*,
   No. CIV. A. 11134, 2000 WL 710199 (Del. Ch. May 24, 2000) ...........13

*In re Depuy Orthopedics, Inc.*,
 888 F.3d 753 (5th Cir. 2018) ..........................................................................15, 16

*Deutsche Bank Trust Co. Ams. V. U.S. Energy Dev. Corp. (In re First River
 Energy, L.L.C.)*,
 986 F.3d 914 (5th Cir. 2021) ......................................................................14, 15, 22

*In re DSI Renal Holdings, LLC*,
 2020 WL 7054390 (Bankr. D. Del. Dec. 2, 2020) .................................................17

*In re Elrod Holdings Corp.*,
 421 B.R. 700 (Bankr. D. Del. 2010) .....................................................................23

*In re ENSCO Offshore Int'l Co.*,
 311 S.W.3d 921 (Tex. 2010) ................................................................................15

*First United Pentecostal Church of Beaumont v. Parker*,
 514 S.W.3d 214 (Tex. 2017) ................................................................................16

*Fishback Nursery, Inc. v. PNC Bank, Nat'l Ass'n*,
 920 F.3d 932 (5th Cir. 2019) ...............................................................................14

*Gagliardi v. Trifoods Int'l*,
 683 A.2d 1049 (Del. Ch. 1996) ............................................................................12

*Gimbel v. Signal Cos.*,
 316 A.2d 599 (Del. Ch. 1974) ..............................................................................10

*Grace Bros. v. UniHolding Corp.*,
 2000 WL 982401 (Del. Ch. July 12, 2000) ..........................................................12

*In re Gulf Fleet Holdings, Inc.*,
 491 B.R. 747 (W.D. La. 2013) .............................................................................23

*Hollis v. Hill*,
 232 F.3d 460 (5th Cir. 2000) ..................................................................................8

*In re IFS Fin. Corp.*,
 417 B.R. 419 (Bankr. S.D. Tex. 2009) .................................................................24

*Janvey for Stanford Receivership Estate v. Proskauer Rose, LLP*,
 3:13-CV-0477-N, 2018 WL 3968933 (N.D. Tex. Apr. 17, 2018) ..........................15

*Katchadurian v. NGP Energy Cap. Mgmt., LLC (In re Northstar Offshore Grp.,
 LLC)*,
 616 B.R. 695 (Bankr. S.D. Tex. 2020) (Isgur, J.) .................................................25

iv

*Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*,
   926 F.3d 103 (5th Cir. 2019) .................................................................8, 25

*Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*),
   196 F. App'x 337 (6th Cir. 2006) ...............................................................23

*Lockton v. Rogers*,
   2022 WL 604011 (Del. Ch. Mar. 1, 2022).................................................17

*In re Lukens Inc. Shareholders Litig.*,
   757 A.2d at 735.............................................................................................17

*In re MarketXT Holdings Corp.*,
   376 B.R. 390 (Bankr. S.D.N.Y. 2007)........................................................25

*Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*,
   800 F. App'x 239 (5th Cir. 2020) ...............................................................16

*Nat'l Oilwell Varco, L.P. v. Sadagopan*,
   CV H-16-2261, 2018 WL 3844714 (S.D. Tex. Aug. 13, 2018), *amended on
   reconsideration in part*, 2018 WL 5778250 (S.D. Tex. Oct. 31, 2018) ..................16

*Pardo v. Gonzaba (In re APF Co.)*,
   308 B.R. 183 (Bankr. D. Del. 2004) ...........................................................23

*In re Pennysaver USA Publ'g, LLC*,
   587 B.R. 445 (Bankr. D. Del. 2018) .............................................................9

*Quadrant Structured Prod. Co., Ltd. v. Vertin*,
   115 A.3d 535 (Del. Ch. 2015).....................................................................12

*RBC Capital Mkts., LLC v. Jervis*,
   129 A.3d 816 (Del. 2015) ...........................................................................16

*Reading Co. v. Trailer Train Co.*,
   No. 7422, 1984 WL 8212 (Del. Ch. Mar. 15, 1984)..................................10

*Reneker v. Offill*,
   2010 WL 1541350 (N.D. Tex. Apr. 19, 2010) ...........................................27

*Schmidt v. Meridian Cap. Found. (In re Black Elk Energy Offshore Operations,
   LLC)*,
   No. 15-34287, 2019 WL 3889761 (Bankr. S.D. Tex. Aug. 16, 2019) (Isgur, J.) ..................25

*In re Se. Waffles, LLC*,
   702 F.3d 850 (6th Cir. 2012) .......................................................................23

*In re Sharp Int'l Corp.*,
  403 F.3d 43 (2nd Cir. 2005)............................................................................23

*Sherer v. Sherer*,
  393 S.W.3d 480 (Tex. App.—Texarkana 2013, pet. denied) ...................................27

*Smith v. Jimenez (In re IFS Fin. Corp.)*,
  Nos. 02-39553, 04-03777, 2007 WL 4244115 (Bankr. S.D. Tex. 2007) (Isgur,
  J.)...............................................................................................................27

*Solow v Stone*,
  994 F. Supp. 173 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998)..................15

*Straehla v. Al Glob. Servs., LLC*,
  619 S.W.3d 795 (Tex. App.—San Antonio 2020)...................................................17

*Tomczak v. Morton Thiokol, Inc.*,
  No. CIV. A. 7861, 1990 WL 42607 (Del. Ch. Apr. 5, 1990) ...........................10, 11

*Tow v. Amegy Bank, N.A.*,
  505 B.R. 455 (S.D. Tex. 2014) (Rosenthal, C.J.) ("Delaware does not allow a
  limited partnership to assert claims on its own behalf.")............................................9

*Tow v. Amegy Bank, N.A.*,
  976 F. Supp. 2d 889 (S.D. Tex. 2013) (Rosenthal, C.J.) ...........................................9

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006)............................................................................12

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) ..............................................................................7

*Walker v. Sonafi Pasteur (In re Aphton Corp.)*,
  423 B.R. 76 (Bankr. D. Del. 2010) .....................................................................22

*In re Walt Disney Co. Derivative Litig.*,
  906 A.2d 27 (Del. 2006) ...................................................................................10

*Wilmington Savings Fund Society, FSB v. iHeart Communications, Inc. (In re
  iHeartMedia, Inc.)*,
  597 B.R. 339 (Bankr. S.D. Tex. 2019) (Isgur, J.) .................................................14

**Statutes**

8 Del. C. § 144(a)(1), (2) .....................................................................................13, 14

11 U.S.C. § 548...................................................................................................22, 25

Tex. Bus. & Com. Code Ann. § 24.005..................................................................25, 26

**Other Authorities**

Fed. R. Bankr. P. 7009 ............................................................................................................8

Fed. R. Evid. 201 ...............................................................................................................21, 27

Fed. R. Civ. P. 8 ......................................................................................................................7

Fed. R. Civ. P. 12(b)(6).....................................................................................................7, 9, 14

Fed. R. Civ. P. 9(b) ........................................................................................................ *passim*

Rest. (2d) Conflict of Laws § 145(2) .........................................................................................15

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, as made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure, defendants Harlan Chappelle ("Chappelle"), Michael Ellis ("Ellis"), and Chappy Energy, LLC ("Chappy Energy" and together with Chapelle and Ellis, the "Defendants"), hereby move to dismiss the *Complaint* [Adv. D.E. 1] (the "Complaint") filed by the Trustee for the Estates of Debtors High Mesa Inc., et al. (the "Trustee"), and respectfully state the following:[1]

## I.      **INTRODUCTION**

The Complaint alleges improprieties with transactions that sophisticated parties who were advised by professionals negotiated as part of a good faith (but unfortunately unsuccessful) effort to keep High Mesa operational despite the significant costs and risks associated with its oil and gas exploration and production business. As a matter of law, the Court should dismiss these claims under Delaware's business judgment rule. The court should also dismiss the alternative claims for aiding and abetting breach of fiduciary duty, as such claims are not valid under applicable Texas law.

Even if these claims could survive the business judgment rule, the Complaint's allegations with respect to reasonably equivalent value ring hollow. The Complaint alleges that Chappelle and Ellis breached their fiduciary duty when they caused the prepetition sale of assets for less than Chappelle and Ellis knew they were worth in an effort to save the enterprise. However, less than six months later, the Trustee sought and received this Court's postpetition approval to sell nearly identical assets for a tiny fraction of the amount now complained of—even though the Trustee represented to this Court that the later sale price was fair value for the assets. As a result, the

---

[1] Under Federal Rule of Bankruptcy Procedure 7012(b), Chappelle, Ellis, and Chappy Energy do not consent to the entry of final orders or judgment by the Bankruptcy Court. Capitalized terms used but not defined in this motion have the same meanings assigned in the Complaint.

Trustee is estopped from alleging that the prepetition sale was for insufficient consideration.

The Complaint further alleges that High Mesa engaged in fraudulent transfers by repaying loans that some of High Mesa's directors arranged for using cash out of their own pockets as rescue financing. As a matter of law, the repayment of loans cannot serve as a basis for claims of actual and constructive fraudulent transfer. In addition, the Complaint's actual fraudulent transfer claims fail to comply with Rule 9(b), and its unjust enrichment claims fail when, as here, the payments complained of were made to satisfy a contractual obligation. Therefore, the Court should dismiss the remaining claims in the Complaint.

## II.  **BACKGROUND**

### A.  **The Complaint's Factual Allegations**

#### 1.  **High Mesa's Business Structure and Board Composition**

The Complaint alleges that High Mesa, Inc. ("<u>HMI</u>") was the ultimate parent of the various other debtor entities mentioned in the Complaint (collectively, "<u>High Mesa</u>"). *See* Compl. ¶ 3. According to the Complaint, HMI owned 100 percent of the equity interests in a company called High Mesa Services, LLC ("HMS"), 91 percent of the limited partnership interests in High Mesa Holdings, LP ("<u>HMH LP</u>"), and 100 percent of the equity interests in HMH LP's general partner, High Mesa Holdings GP, LLC ("<u>HMH GP</u>"). *Id.* ¶ 4.[2] The Complaint alleges that HMH LP, in turn, owned other High Mesa entities, including debtor AM Idaho, LLC ("<u>AM Idaho</u>"). *Id.* ¶ 3.

According to the Complaint, the following groups of individuals and entities collectively owned 100 percent of the stock of HMI: (1) Chappelle and Ellis; (2) HPS Investment Partners, LLC and certain of its affiliates ("<u>Highbridge</u>"); and (3) Bayou City Energy, LLC and certain of its affiliates ("<u>Bayou City</u>"). *Id.* ¶¶ 2, 4. The Complaint further alleges that between February 2019

---

[2] The Complaint alleges that Chappelle and Ellis owned the remaining 9 percent of HMH LP's limited partnership interests. *Id.*

and January 2020, the following individuals sat on HMI's board: (1) Chappelle and Ellis; (2) Jeff Hostettler; (3) Mark Stoner; and (4) Andrew Koehler ¶¶ 2, 5. According to the Complaint, "Hostettler represented [Highbridge], and Stoner and Koehler represented [Bayou City]." *Id.* ¶ 5. The Complaint alleges that the same individuals that served on the board for HMI also served on the boards of managers for HMH GP and HMS. *Id.* Additionally, the Complaint alleges that Chappelle served as the sole manager of AM Idaho. *Id.*

### 2.     The Unconsummated Interstate Transaction and Rescue Financing

Generally, the Complaint alleges that Chappelle, Ellis, and the other HMI directors endeavored to provide High Mesa with liquidity. The Complaint alleges that in December 2018, HMH LP was in talks with a company called Interstate Explorations, LLC and its affiliates ("Interstate") to sell a 25 percent interest in certain oil and gas properties owned by AM Idaho and another 25 percent interest in a midstream company belonging to HMS (the "Interstate Transaction"). *Id.* ¶¶ 43–44. The Complaint alleges that despite the parties' original plans to proceed forward on August 22, 2019, Interstate never executed the Interstate Transaction. *Id.* ¶ 48.

According to the Complaint, the directors also began discussing selling HMH's 10% equity interest in a company called ARM Energy Management, LLC ("AEM") in June 2019 and received a valuation and financial documents for AEM in July 2019, but nothing immediate came of those discussions. *Id.* ¶¶ 62–63.

The Complaint alleges that after the Interstate Transaction deal fell through, the directors began considering so-called "rescue financing" as a solution for HMI's lack of liquidity. *Id.* ¶ 49–54. The Complaint alleges that on August 26, 2019—five days after the Interstate Transaction's slated execution date—HMI received several notifications from vendors threatening to withdraw services given HMI's unpaid invoices. *Id.* ¶¶ 49–51. According to the Complaint, given the directors' serious concern for HMI's lack of liquidity and the fear of bankruptcy, attorneys for

BCE circulated draft promissory notes relating to the proposed financing the next day. *Id.* ¶¶ 52–54. The Complaint alleges that HMI's directors unanimously approved the rescue financing and executed the promissory note on September 12, 2019 (the "Rescue Financing Note"). *Id.* ¶¶ 54–55.

The Complaint further alleges that under the Rescue Financing Note, BCE-MESA, BCE-AMH, Ellis, and Chappy Energy provided cash advances to HMI in two separate installments: the first due on or before September 13, 2019 (the "First Advance"), and the second due on or before October 10, 2019 (the "Second Advance"). *Id.* ¶ 55. The Complaint alleges that, in exchange, HMI—with HMH LP, AM Idaho, and HMS as guarantors—agreed to prioritize (i) repaying the lenders for expenses related to making the First and Second Advances, and (ii) repaying the First and Second Advances upon the sale of AM Idaho or HMS's assets that exceeded a certain fair market value. *Id.* ¶ 57–60. The Complaint alleges that the lenders timely funded the First and Second Advance in September 2019. *Id.* ¶ 61, 66.

### 3.    The Asset Sales and Subsequent Repayments

According to the Complaint, just a couple of weeks after the First Advance, HMH LP received an offer to purchase HMH LP's 10% equity stake in AEM for $2.1 million from a company called ARM Energy Services, LLC ("AES")—an affiliate of AEM. *Id.* ¶¶ 62–63. The Complaint alleges that when AES also agreed to purchase HMH LP's 10 shares in ARM Canada, ULC for a total purchase price of $2.15 million, the parties consummated the sale (the "AES Transaction"). *Id.* ¶¶ 63–64. According to the Complaint, the AES Transaction netted HMH LP $1.9 million less legal fees. *Id.* ¶ 64.

The Complaint further alleges that, consistent with the Rescue Financing Note, proceeds from the AES Transaction were allocated toward (i) paying legal fees related to the execution of the Rescue Financing Note and (ii) repaying ***part*** of the First Advance plus accrued interest—and

then, (iii) funding various High Mesa operating expenses. *See id.* ¶¶ 60, 64–65. Thus, according to the Complaint's allegations, HMH LP used proceeds from the AES Transaction to pay High Mesa operating expenses even though part of the First Advance remained unpaid. *See id.*

In addition, the Complaint alleges that about two and a half months after the Second Advance, on December 24, 2019, Weiser-Brown Oil Company or its investors (collectively, "Weiser-Brown") bought certain assets owned by AM Idaho and HMS (collectively, the "2019 Idaho Assets"). *Id.* ¶¶ 67–68. In exchange for the 2019 Idaho Assets, Weiser-Brown agreed to pay $5.25 million. *Id.* ¶¶ 70, 72. The Complaint alleges that HMI's directors, including Ellis and Chappelle, then allocated a portion of the proceeds toward satisfying obligations associated with the sale—including an obligation owed by AM Idaho for past due processing fees. *Id.* ¶ 76. According to the Complaint, through several transactions, the directors transferred the remaining proceeds to HMH LP. *Id.* ¶¶ 78, 79.

## B.   Procedural History

On January 24, 2020 (the "Petition Date"), HMI and the other High Mesa entities each filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Bankr. D.E. 1. Christopher R. Murray was duly appointed as the Trustee for High Mesa. *See* Bankr. D.E. 4. On January 30, 2020, this Court entered an Order approving joint administration of the bankruptcy cases. Bankr. D.E. 7.

On May 28, 2020, the Trustee filed an *Emergency Motion (I) to Sell: (a) AM Idaho LLC's Oil And Gas Interests Located In Idaho And Oregon; (b) TEA Energy Services LLC's Vehicles Located In Idaho; and (c) High Mesa Services, LLC's Interest In Northwest Gas Processing, LLC; and (II) for an Order Allowing Administrative Expenses* [Bankr. D.E. 206] (the "Emergency Sale Motion"). On June 2, 2020, the Court entered an Order granting the Emergency Sale Motion. Bankr. D.E. 220.

5

In the Emergency Sale Motion, the Trustee sought permission to sell (i) a non-operating, undivided working interest of about 26–32 percent in certain assets of AM Idaho (the "2020 AM Idaho Assets"), and (ii) 35% of HMS's membership interest in NWGP (the "2020 HMS Assets") (collectively, the "2020 Idaho Assets"). Bankr. D.E. 206 ¶ 2. As described in the Emergency Sale Motion, the 2020 AM Idaho Assets are nearly identical to the 2019 AM Idaho Assets, except that the 2020 AM Idaho Assets involved a slightly smaller total percentage of AM Idaho's interests in the relevant assets. *See id.* ¶¶ 12–13. As for the membership interests in NWGP, the 2019 HMS Assets and 2020 HMS Assets are identical in both nature and amount. *See id.* ¶¶ 14–15. The Emergency Sale Motion underscored that the 2020 Idaho Assets were causing the estates to rapidly accumulate administrative expenses—namely, joint interest billings for the 2020 AM Idaho Assets, capital calls for the 2020 HMS Assets, and tax obligations for both. *See id.* ¶¶ 13, 16.

The Trustee filed this Complaint on January 21, 2022. In Count 1, the Complaint alleges that Chappelle, Ellis, and the other members of HMI's board breached fiduciary duties to HMI, HMH GP, HMH LP, HMH, and AM Idaho "by (a) causing the Debtors to enter into the Fraudulent Transfers described below and (b) permitting the transfer of assets pursuant to [the sale to Weiser-Brown] for less than reasonably equivalent value, in order to ensure that the Debtors repaid their obligations under the [Rescue Financing Note]." Compl. ¶ 87 (footnote omitted). The Complaint alleges that Chappelle and Ellis breached duties of care and loyalty, including by "caus[ing] the sale of some of the Debtors' assets for less than they knew the assets were worth." *Id.* ¶ 85–88. In Count 2, the Complaint alleges, in the alternative, that HMI's directors (including Chappelle and Ellis) aided and abetted breaches of fiduciary duty. *Id.* ¶¶ 92–95.

Counts 3 to 6 of the Complaint allege that various repayments under the Rescue Financing Note, including payments to Ellis and Chappy Energy (collectively, the "Rescue Financing

Repayments"), were actual and constructive fraudulent transfers. *Id.* ¶¶ 96–136. The Complaint seeks to avoid and recover each of these repayments under both the Bankruptcy Code and the Texas Business & Commerce Code. *See id.* In Count 7, the Complaint alleges that Ellis, Chappy Energy, and other defendants were unjustly enriched by their receipt of the same payments. *Id.* ¶ 138. Finally, in Count 8, the Complaint seeks disallowance of any claims filed by Ellis, Chappy Energy, or certain other defendants. *Id.* ¶ 139–43.

### III.   LEGAL STANDARD

A complaint warrants dismissal under Rule 12(b)(6) when it lacks sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether the plausibility standard has been met is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (internal citations omitted).

To be plausible, a claim must go beyond pleading facts that show a "mere possibility of misconduct" to pleading facts sufficient to permit "the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. Pleadings that offer mere "labels and conclusions" are insufficient because "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Allegations that are "no more than conclusions, are not entitled to the assumption of truth" and must be supported by factual allegations. *Iqbal*, 556 U.S. at 679. The notice pleading requirements of Rule 8 entitle "[e]ach defendant … to know what he or she did that is asserted to be wrongful," such that allegations based on a "theory of collective responsibility" cannot withstand a motion to dismiss. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Allegations of fraud are also subject to heightened pleading requirements under Federal Rule of Civil Procedure 9(b), which applies under Federal Rule of Bankruptcy Procedure 7009. Rule 9(b) requires factual allegations of the "'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Life Partners Creditors' Tr. v. Cowley (In re Life Partners Holdings, Inc.)*, 926 F.3d 103, 117 (5th Cir. 2019). "In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct." *Id.*

## IV.   ARGUMENT

**A.   Count 1 of the Complaint fails to state a claim against Chappelle and Ellis for breach of fiduciary duty.**

Count 1 of the Complaint is deficient under Delaware law for several reasons. Given that HMI, HMH GP, HMH LP, and HMS are all Delaware entities, Delaware law applies to the claims that any of the Individual Directors breached fiduciary duties to those entities. Compl. ¶¶ 20–23.[3] As discussed below, the Complaint does not state a claim against the Individual Directors under Delaware law.

**1.   The Trustee lacks standing to bring derivative claims on behalf of Delaware limited liability companies or limited partnerships.**

To the extent that the Complaint includes derivative claims for breach of fiduciary duties on behalf of Delaware LLCs or LPs, the Trustee lacks standing to assert those claims under Delaware law. The Complaint alleges that HMH LP, HMH GP, and HMS are all Delaware LLCs and LPs. Under Delaware law, the Trustee cannot bring derivative claims on behalf of these

---

[3] Furthermore, Delaware law governs the breach of fiduciary duty claims against Chappelle and Ellis because the Complaint alleges that they were sitting on the boards of HMI (the ultimate parent of HMH LP) and HMH GP (the general partner of HMH LP). *See* Compl. ¶¶ 3–4. Under the internal affairs doctrine, which Texas courts follow, "the internal affairs of the foreign corporation, including but not limited to the rights, powers, and duties of its board of directors . . . are governed by the laws of the jurisdiction of incorporation." *Hollis v. Hill*, 232 F.3d 460, 464–64 (5th Cir. 2000) (internal citations omitted).

entities. *See In re Pennysaver USA Publ'g, LLC*, 587 B.R. 445, 467 (Bankr. D. Del. 2018) (finding that a Trustee lacked standing to bring a derivative claim on behalf of creditors against an LLC absent evidence that the creditors were assignees or members of the Debtors' LLCs); *Tow v. Amegy Bank, N.A.*, 505 B.R. 455, 467 (S.D. Tex. 2014) (Rosenthal, C.J.) ("Delaware does not allow a limited partnership to assert claims on its own behalf."); *Tow v. Amegy Bank, N.A.*, 976 F. Supp. 2d 889, 904 (S.D. Tex. 2013) (Rosenthal, C.J.) (finding that a trustee lacked derivative standing to sue on behalf of a partnership). Accordingly, the Court should dismiss Count 1 of the Complaint to the extent that it asserts derivative claims on behalf of HMH LP, HMH GP, or HMS.

2. **The Complaint fails to establish that Chappelle or Ellis owed fiduciary duties to HMH GP, HMH LP, HMS, or AM Idaho.**

Chappelle and Ellis incorporate by reference the Rule 12(b)(6) Motion to Dismiss the Complaint on Behalf of Jeffrey Hostettler (the "Hostettler Motion"), particularly regarding the Complaint's failure to allege fiduciary duties to several entities. In particular, because the Complaint alleges that Chappelle and Ellis were minority stakeholders in HMI and HMH LP, the Complaint does not properly allege that either individual dominated or controlled any entity's assets. Compl. ¶¶ 25–26. Additionally, to the extent that the Complaint repeatedly groups together all of HMI's former directors, those allegations do not meet Rule 12(b)(6) standards. *See* Hostettler Motion § 1.B. Accordingly, the Court should dismiss Count 1 of the Complaint to the extent that it asserts breach of fiduciary duty claims on behalf of HMH GP, HMH LP, HMS, or AM Idaho.

3. **The Complaint fails to allege any breach of the duty of care.**

Because the business judgment rule protects Chappelle's and Ellis's decisions from hindsight attacks, the Complaint fails to state a claim against them for breach of the duty of care.[4]

---

[4] Chappelle and Ellis further incorporate by reference their arguments regarding the HMI Certificate of Incoporation raised in the *Murray v. Chappelle, et al.* matter. *See* Individual Directors' Mot. to Dismiss § II.C.

Delaware law entitles the Individual Directors to a presumption that they acted "on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 52 (Del. 2006) (quoting (*Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)). Under that rule, "a board's decision, otherwise properly based, could be wrong, and still withstand attack." *Reading Co. v. Trailer Train Co.*, No. 7422, 1984 WL 8212, at *4 (Del. Ch. Mar. 15, 1984). Viewing the allegations in the Complaint under applicable Delaware law demonstrates that the Complaint has failed to state a claim against Chappelle and Ellis for breach of fiduciary duty.

To establish a breach of the duty of care under the business judgment rule, a plaintiff must plead facts sufficient to show gross negligence. *See Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000). Gross negligence involves "'reckless indifference to or a deliberate disregard of the whole body of stockholders' or actions which are 'without the bounds of reason.'" *Tomczak v. Morton Thiokol, Inc.*, No. CIV. A. 7861, 1990 WL 42607, at *12 (Del. Ch. Apr. 5, 1990) (quoting *Allaun v. Consolidated Oil Co.*, 147 A.257, 261 (Del. Ch. 1929)). Claims that the conduct in question should fall outside the protection of the business judgment rule are void absent factual allegations demonstrating that Chappelle and Ellis "'acted so far without information that they can be said to have passed an unintelligent and unadvised judgment.'" *Gimbel v. Signal Cos.*, 316 A.2d 599, 615 (Del. Ch. 1974) (quoting *Mitchell v. Highland-Western Glass Co.*, 167 A.326 (Del. Ch. 1933)).

The Complaint fails to allege either gross negligence or unintelligible and unadvised judgment. Accordingly, the Court should dismiss Count 1 insofar as it alleges a breach of the duty of care. The Complaint alleges that Chappelle and Ellis, after advancing cash to HMI under the express terms of the Rescue Financing Note (in the case of Chappelle, through Chappy Energy), caused High Mesa to sell the 2019 Idaho Assets to ensure repayment of these loans. Compl. ¶¶ 61–

10

63, 66, 87–89. But even assuming that the asset sales were for the purpose of ensuring repayment of the loans, the Complaint fails to explain how selling assets to satisfy preexisting obligations could ever amount to reckless or blatant disregard for the interests of High Mesa's stockholders—especially since the Complaint alleges that the stockholders themselves, or their direct representatives approved the loans and subsequent asset sales. *See id.* ¶¶ 54, 62–63, 67–80. And to the extent that the Complaint alleges that Weiser-Brown bought the 2019 Idaho Assets for an unreasonably low price, those allegations lack credibility based on the Trustee's own assertions. *Id.* ¶¶ 67–80, 87–88; *see infra* Part C.[5]

Nothing else in the Complaint saves Count 1. Instead, the allegations show that Ellis and Chappelle were neither reckless nor grossly negligent. *See Tomczak*, 1990 WL 42607, at *12. In particular, the Complaint's allegations show that HMI's directors and High Mesa's officers were doing what was necessary to raise funds to pay the company's debts—the exact opposite of reckless or grossly negligent behavior. For instance, the Complaint alleges that High Mesa used the proceeds from the First Advance "to make payments to certain vendors, for mandatory state tax payments and to fund payroll" (Compl. ¶ 61); used proceeds from the AES Transaction to pay High Mesa's legal fees (*id.* ¶ 64); and used proceeds from the Weiser-Brown sale to pay costs owed under relevant contracts, in addition to other legal fees and expenses (*id.* ¶¶ 73, 75–76, 78–79, 82).

All of these allegations show that the directors and officers were legitimately trying to satisfy High Mesa's obligations. And to the extent that the Complaint suggests that HMI's directors improperly channeled the Weiser-Brown sale proceeds away from AM Idaho and HMS to pay off

---

[5] In addition, as set forth below, the payment of funds to satisfy debt obligations cannot, as a matter of law, serve as a basis for a fraudulent transfer claim.

other obligations—including those that HMI owed under the Rescue Financing Note—Delaware

law precludes the Complaint from relying on that theory to establish a breach of the duty of care.

*See, e.g., Grace Bros. v. UniHolding Corp.*, 2000 WL 982401, at *12 (Del. Ch. July 12, 2000)

("[A] wholly-owned subsidiary functions to benefit its parent.").[6] Even the fact that High Mesa

subsequently sought relief under the Bankruptcy Code does not mean that Chappelle or Ellis

breached any duty of care; Delaware law does not impose liability on officers simply because their

chosen business strategy did not pan out. *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,

906 A.2d 168, 174 (Del. Ch. 2006); *Gagliardi v. Trifoods Int'l*, 683 A.2d 1049, 1051 (Del. Ch.

1996) ("The business outcome of an investment project that is unaffected by director self-interest

or bad faith cannot itself be an occasion for director liability.").

Even if AM Idaho and HMS were insolvent at the time of the Weiser-Brown sale, Count 1

of the Complaint fails to state a claim because Chappelle and Ellis owed no fiduciary duties to

High Mesa's creditors. *Quadrant Structured Prod. Co., Ltd. v. Vertin*, 115 A.3d 535, 546–47 (Del.

Ch. 2015) ("The directors of an insolvent firm do not owe any particular duties to creditors. They

continue to owe fiduciary duties to the corporation for the benefit of all of its residual claimants, a

category which now includes creditors."). As the business judgment rule governs, Chappelle and

Ellis are entitled to a presumption that they acted in good faith and in the High Mesa debtors'

interest. *Aronson*, 473 A.2d at 812. This is so even if some directors had an interest in the

questioned transactions. *See Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 363 (Del. 1993),

*decision modified on reargument*, 636 A.2d 956 (Del. 1994) (explaining that "[t]his Court has

never held that one director's colorable interest in a challenged transaction is sufficient, without

---

[6] The Complaint also directly disproves any notion that AM Idaho and HMS received no benefit from High Mesa's repaying the Rescue Financing, since the Complaint specifically alleges both (i) that AM Idaho and HMS "unconditionally guaranteed" HMI's obligations under the Rescue Financing Note and (ii) that the lenders received security interests in AM Idaho's and HMS's assets in connection with the Rescue Financing Note. Compl. ¶¶ 58–59.

more, to deprive a board of the protection of the business judgment rule presumption of loyalty" and that "there must be evidence of disloyalty" such as entrenchment, fraud on the corporation or board, abdication of directorial duty, or the sale of one's vote); *see also Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794 A.2d 1161, 1178 (Del. Ch. 1999).[7] The Court should therefore conclude that Count 1 of the Complaint fails to state a claim for breach of the duty of care against Chappelle or Ellis.

### 4.   The Complaint's allegations show that Chappelle and Ellis did not breach the duty of loyalty.

The Trustee also cannot state a claim against Chappelle or Ellis for breach of the duty of loyalty because the allegations in the Complaint show that all of High Mesa's directors—and thus all of its equity holders—approved of the conduct at issue. Under Delaware law, an interested-director transaction is not void or voidable if it is approved by a majority of fully informed and disinterested directors or by the corporation's fully informed stockholders. 8 Del. C. § 144(a)(1), (2). If the transactions at issue had such approval, then Section 144 of the General Corporation Law protects the Individual Directors from the Trustee's claims. *See Cooke v. Oolie*, No. CIV. A. 11134, 2000 WL 710199, at *13 n.41 (Del. Ch. May 24, 2000).

According to the Complaint, all directors and all equity holders approved the transactions at issue. As already explained, the Trustee alleges that **100 percent** of HMI's, HMH LP's, HMS's, and AM Idaho's equity interests were ultimately owned by (1) Chappelle and Ellis, (2) Highbridge, and (3) Bayou City. Compl. ¶ 4. And according to the Complaint, each of those persons (or their representatives) sat on HMI's board and approved the transactions that the Trustee now attacks. *See id.* ¶¶ 5, 76–79.[8] As a result, all relevant stockholders approved these transactions.

---

[7] Chappelle and Ellis also incorporate by reference the arguments in Section I.A and I.C of the Hostettler Motion.

[8] While the Complaint does not specifically allege that HMI's board unanimously approved most of the transactions at issue, it is implicit in the Complaint's group pleading. *E.g.*, *id.* ¶ 63 ("AEH and the Directors negotiated the purchase

Additionally, Section 144 protects both the Weiser-Brown sale and the Rescue Financing Repayments because, based on the allegations in the Complaint, HMI's board plainly had full knowledge of Chappelle's, Ellis's, and Bayou City's obvious interests in each of these transactions, and therefore, the Complaint cannot allege that HMI's board was less than fully informed. *Id.* ¶¶ 55, 60. Furthermore, the Complaint alleges that HMI's disinterested directors voted in favor of the transactions. *See id.* ¶¶ 54, 64–65, 76–80. As a result, Section 144 protects them from any claim of breach of the duty of loyalty.

**B.   Count 2 of the Complaint fails to state a claim that Chappelle or Ellis aided and abetted any breach of fiduciary duty.**

The Court should dismiss Count 2 of the Complaint for two independent reasons. ***First***, the allegations show that Texas law applies to the disputed conduct and does not recognize claims for aiding and abetting breaches of fiduciary duty. ***Second***, even if the Trustee can theoretically state an aiding and abetting claim under Texas or Delaware law, he has not alleged the required scienter, so the Court should dismiss his aiding and abetting claims under Rule 12(b)(6).

**1.   Texas law governs Count 2 of the Complaint.**

To determine which state's law applies to the Complaint's aiding and abetting claim, the Court must first determine which choice-of-law rules to apply. It is an open question whether courts exercising bankruptcy jurisdiction in the Fifth Circuit should apply forum-state or federal choice of law rules. *Fishback Nursery, Inc. v. PNC Bank, Nat'l Ass'n*, 920 F.3d 932, 935–36 (5th Cir. 2019). But this Court has previously applied forum-state choice-of-law rules to causes of action that arise outside of the Bankruptcy Code. *Wilmington Savings Fund Society, FSB v.*

---

price for the transaction."); *id.* ¶ 76 ("[T]he Directors allowed the application of some $2.66 million . . . ."); *id.* ¶ 77 (referring to "the Directors who caused these Debtors to undertake these transactions"). Furthermore, with respect to the initial approval of the Rescue Financing Note, the Trustee does specifically allege unanimous approval. *Id.* ¶ 54.

*iHeart Communications, Inc. (In re iHeartMedia, Inc.)*, 597 B.R. 339, 350 (Bankr. S.D. Tex. 2019)

(Isgur, J.).

      Texas choice-of-law rules point to the "most significant relationship" test for tort claims.

*See, e.g.*, *In re ENSCO Offshore Int'l Co.*, 311 S.W.3d 921, 928 (Tex. 2010); *Janvey for Stanford*

*Receivership Estate v. Proskauer Rose, LLP*, 3:13-CV-0477-N, 2018 WL 3968933, at *1, *5 (N.D.

Tex. Apr. 17, 2018).[9] This test requires the Court to consider four factors:

> (a)     the place where the injury occurred,
>
> (b)     the place where the conduct causing the injury occurred,
>
> (c)     the domicile, residence, nationality, place of incorporation, and place of business of the parties, and
>
> (d)     the place where the relationship, if any, between the parties is centered.

Rest. (2d) Conflict of Laws § 145(2).[10]

      Here, the allegations in the Complaint show that Texas law applies. The Complaint alleges

that the Individual Directors are each citizens of Texas, as are a majority of the defendants in this

case, and the disputed conduct occurred in Texas. Compl. ¶¶ 31–38. Additionally, High Mesa filed

for bankruptcy in Texas. *Id.* ¶ 15. Accordingly, all factors point toward the application of Texas

law.

> **2.**     **Texas law does not recognize claims for aiding abetting breaches of fiduciary duty.**

      Because Texas law applies, Fifth Circuit precedent requires the Court to dismiss Count 3

---

[9] Other courts have reasoned that unlike breach of fiduciary duty claims, aiding and abetting claims "raise garden-variety tort issues," and should therefore be subject to an ordinary tort choice-of-law analysis. *E.g.*, *Solow v Stone*, 994 F. Supp. 173, 177 (S.D.N.Y. 1998), *aff'd*, 163 F.3d 151 (2d Cir. 1998).

[10] Federal choice-of-law rules would also require application of the Restatement (Second) of Conflicts of Law. *Deutsche Bank Trust Co. Ams. V. U.S. Energy Dev. Corp. (In re First River Energy, L.L.C.)*, 986 F.3d 914, 924 (5th Cir. 2021).

with prejudice. In *In re Depuy Orthopedics, Inc.*, 888 F.3d 753 (5th Cir. 2018), the Fifth Circuit observed that the Texas Supreme Court has never recognized a cause of action for aiding and abetting. *Id.* at 781; *see also First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) ("[T]his Court has not expressly decided whether Texas recognizes a cause of action for aiding and abetting."). The *Depuy* court reasoned that a federal court adjudicating a state-law claim "exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts." 888 F.3d 753 at 781. Thus, "no such claim exists in Texas." *Id.* at 782; *see also Midwestern Cattle Mktg., L.L.C. v. Legend Bank, N.A.*, 800 F. App'x 239, 250 (5th Cir. 2020) (affirming dismissal of aiding and abetting claim).

*Depuy* prohibits plaintiffs from pleading claims for aiding and abetting a breach of fiduciary duty under Texas law in a federal court. Chief Judge Rosenthal of the Southern District of Texas has recognized that *Depuy* applies to aiding and abetting breach of fiduciary duty claims. *Nat'l Oilwell Varco, L.P. v. Sadagopan*, CV H-16-2261, 2018 WL 3844714, at *8 n.2 (S.D. Tex. Aug. 13, 2018), *amended on reconsideration in part*, 2018 WL 5778250 (S.D. Tex. Oct. 31, 2018). This Court should likewise conclude that *Depuy* bars the claims in Count 3 of the Complaint and dismiss them for failure to state a claim on which relief can be granted.

### 3. Alternatively, Count 2 of the Complaint does not allege that either Chappelle or Ellis acted with knowledge or substantially assisted a breach of fiduciary duty.

Even if this Court recognizes Count 3 under either Texas or Delaware law, that count fails to state a claim against the Individual Directors because the Complaint fails to allege that the Individual Directors had actual knowledge or otherwise substantially assisted a breach of fiduciary duty. To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must generally establish: (1) the existence of the fiduciary relationship; (2) breach of the fiduciary relationship; (3) knowing participation in the breach by the non-fiduciary defendants; and (4) damages

proximately caused by the breach. *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015). "Participation" sufficient to state a claim against defendants for aiding and abetting must amount to substantial assistance. *Lockton v. Rogers*, 2022 WL 604011, at *16 (Del. Ch. Mar. 1, 2022). Here, the Complaint does not contain factual allegations supporting the elements of knowledge or substantial assistance.

First, with respect to the defendants' mental state, a barebones allegation that Chappelle and Ellis knowingly participated in a breach of fiduciary duty without factual support is insufficient to establish the actual or constructive knowledge required for aiding and abetting under Delaware law. *77 Charters, Inc. v. Gould*, 2020 WL 2520272, at *21. Without specific alleged facts demonstrating such knowledge, Chappelle and Ellis could not have aided and abetted (or knowingly participated in) any breach of fiduciary duty under Texas law. *Straehla v. Al Glob. Servs., LLC*, 619 S.W.3d 795, 804 (Tex. App.—San Antonio 2020) (stating that the defendant must be "aware of his participation in the third party's breach of its duty" to sustain the cause of action).

Second, the Complaint also fails to allege that Chappelle and Ellis substantially assisted a breach of fiduciary duty. "Substantial assistance, 'by definition, implies active participation or affirmative action.'" *In re DSI Renal Holdings, LLC*, 2020 WL 7054390, at *6 (Bankr. D. Del. Dec. 2, 2020) (quoting *In re NewStarcom Holdings, Inc.*, 547 B.R. 106, 132 (Bankr. D. Del. 2016)). Merely approving of the transactions does not constitute substantial assistance under Delaware law. *In re Lukens Inc. Shareholders Litig.*, 757 A.2d at 735 (stating that a complaint's conclusory allegations that a defendant "approved and urged" a transaction did not satisfy the plaintiff's obligation to demonstrate knowing participation in the transaction sufficient to sustain an aiding and abetting claim). As a result, the Court should dismiss Count 2 of the Complaint.

17

**C.     Representations in the Emergency Sale Motion contradict the Complaint's allegations that High Mesa sold the 2019 Idaho Assets to Weiser-Brown for less than reasonably equivalent value.**

Much of the Complaint relies on the assertion that High Mesa received insufficient consideration for its sale of the 2019 Idaho Assets to Weiser-Brown. *See, e.g.*, Compl. ¶¶ 67–80, 88. Yet the Trustee's prior conduct in these chapter 7 cases either estops him from claiming or renders incredible the Complaint's allegations that Weiser-Brown paid too low of a price for these assets.

As the Complaint alleges, High Mesa's sale to Weiser-Brown in 2019 involved two distinct sets of assets: (i) an undivided 35% of 8/8 right, title, and interest in certain assets of AM Idaho (the "2019 AM Idaho Assets"), and (ii) 35% of HMS's membership interest in NWGP (the "2019 HMS Assets"). *Id.* ¶¶ 69–72. The Trustee alleges that Weiser-Brown agreed to a purchase price of $1.05 million for the 2019 AM Idaho Assets and $4.2 million for the 2019 HMS Assets. *Id.* ¶¶ 70, 72.[11] According to the Complaint, this sum consisted of less than reasonably equivalent value for the 2019 Idaho Assets. *Id.* ¶ 87.

This allegation contradicts the Trustee's own representations to this Court less than 6 months after the 2019 sale closed. Specifically, in late May 2020, the Trustee filed his Emergency Sale Motion, in which he sought permission to sell (i) the 2020 AM Idaho Assets, i.e., a non-operating, undivided working interest of about 26–32 percent in certain assets of AM Idaho, and (ii) the 2020 HMS Assets, i.e., 35% of HMS's membership interest in NWGP (the "2020 HMS Assets"). Bankr. D.E. 206 ¶ 2. As described in the Emergency Sale Motion, the 2020 AM Idaho Assets are nearly identical to the 2019 AM Idaho Assets, except that the 2020 AM Idaho Assets

---

[11] As the Complaint points out, $2.18 million of the $4.2 million for the 2019 HMS Assets was used to pay pipeline costs that NWGP was responsible for. *Id.* ¶ 72.

involved a slightly smaller total percentage of AM Idaho's interests in the relevant assets. *See id.* ¶¶ 12–13. As for the membership interests in NWGP, the 2019 HMS Assets and 2020 HMS Assets are identical in both nature and amount. *See id.* ¶¶ 14–15. The Emergency Sale Motion underscored that the 2020 Idaho Assets were causing the estates to rapidly accumulate administrative expenses—namely, joint interest billings for the 2020 AM Idaho Assets, capital calls for the 2020 HMS Assets, and tax obligations for both. *See id.* ¶¶ 13, 16. Indeed, since the Petition Date just a few months earlier, the 2020 AM Idaho Assets had resulted in administrative expenses of about $151,000, and the 2020 HMS Assets had resulted in administrative expenses of about $218,00. *Id.*

Even though the Complaint accuses HMI's directors of breaching fiduciary duties by selling the 2019 Idaho Assets for ***more than $5 million*** in late December 2019, the Emergency Sale Motion sought the Court's permission to sell the nearly identical 2020 Idaho Assets ***for less than $600,000*** in May and June 2020. *See id.* ¶ 22.[12] What's more, in the Emergency Sale Motion, the Trustee specifically represented that after consulting his counsel and financial advisors, he believed the proposed gross purchase price of about $587,000 was a fair value for the 2020 Idaho Assets:

> The Trustee has a sound business justification for selling and assigning the Assets under the terms outlined above. The Trustee shared the buyer's offer with his professionals, including his attorneys and financial advisors at MACCO Restructuring Group, LLC ("**MACCO**"). MACCO analyzed the value of the Assets based on historical cash flows with consideration of the continued administrative costs associated with the Assets. ***Based upon its analysis, the Trustee believes that the buyer's offer represents a fair value for the Assets.*** Furthermore, accepting the offer now will result in an immediate cash inflow to the estate. Given the uncertainty and volatility of the current oil and gas market, the

---

[12] The total gross purchase price included an additional $50,000 for the sale of certain vehicles. *See id.*

19

> Trustee believes selling the Assets immediately is in the best interests of the estates and its creditors.

*Id.* ¶ 24 (emphasis added). The Trustee specifically cited the accumulation of administrative costs in support of his argument that the Court should authorize him to enter into the sale at this price on an emergency basis. *Id.* ¶ 25 ("Liquidating the Assets now will permit the Trustee to eliminate the continued accrual of these administrative expenses while also providing for an immediate inflow of cash to the estates."). Four days later, the Court granted the Emergency Sale Motion. Bankr. D.E. 220.

Under the doctrine of judicial estoppel, the Trustee may not assume a position in this litigation that is inconsistent with his position in the Emergency Sale Motion. Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 205 (5th Cir. 1999) (quoting *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). It applies when (i) a party advances a position that is "clearly inconsistent" with his prior position, and (ii) the party actually convinced the court to accept that prior position. *Id.* at 206.

The Complaint's allegations regarding the sale price for the 2019 Idaho Assets meets both elements of this test. It is clearly inconsistent for the Complaint to allege that High Mesa's directors breached fiduciary duties by selling the 2019 Idaho Assets for more than $5 million, when the Trustee himself argued to this Court just a few months later that similar assets were worth only about **one tenth** of that amount. And because the Court granted the Emergency Sale Motion, there can be no question that the Trustee actually convinced the Court to accept his position that the sale price was fair. *See* Bankr. D.E. 220 at 1–2 (finding that "the Motion is in the best interests of the debtors, their estates, creditors, stakeholders, and other parties in interest" and that "the sale of the

Assets under the terms described in the Motion is an exercise of the Trustee's reasonable business judgment"). Knowing that the Trustee took this position and consummated sales of nearly identical assets at a far lesser value for the estates, the Court should conclude that the Trustee is estopped from claiming in this litigation that High Mesa sold the 2019 Idaho Assets for an unreasonably low price.

Even if these inconsistent positions do not rise to the level of actual estoppel, the Court should still conclude, based on the record described above, that the Complaint does not credibly allege that High Mesa received less than reasonably equivalent value for the Idaho Assets in December 2019. As already noted, the two sales occurred just a few months apart, and even the extent to which oil and gas prices fluctuated between late 2019 and mid-2020 is far from enough to reconcile the two conflicting positions.[13] The Complaint also generally ignores the fact, made clear in the Emergency Sale Motion, that continued ownership of the 2019 Idaho Assets would not necessarily have been a net positive for High Mesa, since it is reasonable to assume that (like the 2020 Idaho Assets) the 2019 Idaho Assets would have caused High Mesa to continue to accumulate obligations to pay joint interest billings, taxes, and capital calls. *See* Compl. ¶¶ 67–80.[14] The Complaint even goes so far as to make the conclusory allegation that neither AM Idaho nor HMS "received any benefit" from a pipeline they were required to help fund—even though the Emergency Sale Motion plainly shows that both entities continued to own interests relating to this pipeline postpetition. *Id.* ¶ 77; *see also id.* ¶ 73 (alleging that High Mesa Services "received no

---

[13] By way of example, on December 31, 2019, shortly after the first sale closed, the price of crude oil was about $63 per barrel. On May 31, 2020, shortly before the second sale closed, the price was about $30 per barrel. *See* Ex. A, YCharts, *Average Crude Oil Spot Price*, https://ycharts.com/indicators/average_crude_oil_spot_price. To the extent necessary, Chappelle and Ellis request that the Court take judicial notice of these prices under Federal Rule of Evidence 201.

[14] Indeed, if anything, the Complaint appears to criticize prepetition High Mesa for performing exactly the same types of offsets of these expenses that the Trustee proposed in the Emergency Sale Motion. *Id.* ¶ 72. The Court should reject this criticism in light of the facts described in the Emergency Sale Motion.

consideration" for a contractually required payment to NWGP). Based on the record of these chapter 7 cases, the Court should entirely disregard these conclusory and falsifiable allegations.

In sum, prior statements in the Emergency Sale Motion (which the Court granted) directly contradict the allegation that the Complaint now advances with respect to the sale price for the Idaho Assets. As a result, the Court should dismiss the breach of fiduciary allegations in Counts 1 and 2 to the extent they rely on the assertion that the purchase price for the 2019 Idaho Assets was insufficient.

**D.      Counts 3–6 of the Complaint fail to allege claims that the Rescue Financing Repayments were fraudulent transfers.**

The fraudulent transfer claims in Counts 3–6 of the Complaint are likewise deficient for two main reasons. ***First***, because the Complaint acknowledges that the Debtors received reasonably equivalent value for the Rescue Financing Repayments, both the actual and constructive fraudulent transfer claims are deficient on their face. ***Second***, the actual fraudulent transfer claims in Counts 3 and 5 warrant dismissal because they do not meet Rule 9(b) pleading standards.

**1.      The fraudulent transfer claims in Counts 3 to 6 of the Complaint fail to state a claim.**

The Complaint alleges that High Mesa used the proceeds from the sale of assets to repay the rescue financing loans owed to Ellis and Chappy Energy under the terms of a written promissory note (and one that was accompanied by guaranties and security interests, to boot). Compl. ¶¶ 55, 58, 59. Satisfaction of an antecedent debt is not a fraudulent transfer, and therefore, these claims should be dismissed. *See* 11 U.S.C. §548(d)(2)(A); *see also, e.g., Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp)*, 6 F.3d 1119, 1126 (5th Cir. 1993), abrogated on other grounds by *Tex. Truck Ins. Agency, Inc. v. Cure (In re Dunham)*, 110 F.3d 286, 288–89 (5th Cir. 1997); *Walker v. Sonafi Pasteur (In re Aphton Corp.)*, 423 B.R. 76, 89 (Bankr. D. Del.

2010) (noting that "when a transfer is made to pay an antecedent debt, the transfer may not be set aside as constructively fraudulent"); *Pardo v. Gonzaba (In re APF Co.)*, 308 B.R. 183, 187 (Bankr. D. Del. 2004) (dismissing constructive fraudulent transfer claim, holding "the payments made on the promissory note were made for value—satisfaction of an antecedent debt").

When a prepetition debtor receives a dollar-for-dollar debt reduction, as a matter of law that prepetition debtor receives reasonably equivalent value, provided that the debt reduction occurs at or about the time of the transfer. *See Lisle v. John Wiley & Sons, Inc.* (*In re Wilkinson*), 196 F. App'x 337, 343 (6th Cir. 2006). In *Wilkinson*, the debtor, while insolvent, paid $1 million to a publisher on behalf of a bookstore in which the debtor owned a majority interest. *Id.* at 339. In exchange, the bookstore reduced by $1 million the debt owed to it by the debtor. *Id.* The court held that, as appropriately measured on the date of the transfer, the debtor received reasonably equivalent value for its transfer to the publisher through the dollar-for-dollar debt reduction, and that the debtor's net worth was unaffected by the transfer. *Id.* at 343.

Additionally, Texas courts have recognized that a preferential payment to a creditor does not equate to a constructive fraudulent transfer. *Asarco LLC v. Americas Mining Corp.*, 396 B.R. 278, 390 n.128 (S.D. Tex. 2008). Accordingly, when a debtor makes a transfer to satisfy an antecedent debt, courts generally recognize that the debtor has received equivalent value in the form of the debt being discharged. *Id*; *see also In re Gulf Fleet Holdings, Inc.*, 491 B.R. 747, 766 (W.D. La. 2013); *In re Se. Waffles, LLC*, 702 F.3d 850, 857 (6th Cir. 2012) ("[A] dollar-for-dollar reduction in debt constitutes—as a matter of law—reasonably equivalent value . . . ."); *In re Sharp Int'l Corp.*, 403 F.3d 43, 55–56 (2nd Cir. 2005) (holding that payment to a bank in satisfaction of an obligation was for value notwithstanding the fact that the debtor engaged in fraud to obtain the funds used to pay the bank); *In re Elrod Holdings Corp.*, 421 B.R. 700, 714 (Bankr. D. Del. 2010);

*In re IFS Fin. Corp.*, 417 B.R. 419, 441-42 (Bankr. S.D. Tex. 2009) (under relevant fraudulent conveyance law, "value" includes satisfaction of an antecedent debt); *In re Cent. Ill. Energy Co-op v. Camille's of Canton, Inc.*, 2011 WL 3666611, at *4 (Bankr. C.D. Ill. Aug. 22, 2011) (finding that debtor's payment toward contractual obligations "discharged that liability and could not have been fraudulent").

The Complaint shows that High Mesa made the Rescue Financing Repayments to Ellis and Chappy Energy in satisfaction of a preexisting obligation, meaning that High Mesa received reasonably equivalent value as a matter of law. As the Complaint alleges, the Rescue Financing Repayments were "made according to the terms of [a note]." Compl. ¶ 81. The Complaint further alleges that the Rescue Financing Repayments were made on account of a contractual obligation to Ellis and Chappy Energy, as well as that the Rescue Financing Repayments satisfied a debt for which High Mesa would otherwise have been responsible. *See id.* ¶¶ 55–60, 64-65, 81. In addition, the Complaint acknowledges that the Rescue Financing Note included subsidiary guaranties and involved the lenders' receipt of security interests in the assets of HMI and its subsidiaries. *Id.* ¶¶ 58–59. Thus, there can be no dispute that HMI's subsidiaries—including both AM Idaho and HMS—benefited from the satisfaction of these allegations.

For these reasons, despite the Complaint's conclusory statement that High Mesa "did not receive equivalent value in exchange for the [Rescue Financing Repayments]" (*id.* ¶ 114), the Complaint's allegations actually demonstrate that High Mesa did receive dollar-for-dollar value for the Rescue Financing Repayments. Accordingly, Counts 3 to 6 of the Complaint fail to state claims for actual and constructive fraudulent transfer as a matter of law and should therefore be dismissed.

24

2.      **The actual fraudulent transfer claims in Counts 3 and 5 of the Complaint do not meet stringent Rule 9(b) standards.**

Additionally, the Court should dismiss the Complaint's actual fraudulent transfer claims under Rule 9(b). As this Court has previously held, Rule 9(b) applies to actual fraudulent transfer claims *See e.g.*, *Katchadurian v. NGP Energy Cap. Mgmt., LLC (In re Northstar Offshore Grp., LLC)*, 616 B.R. 695, 733 (Bankr. S.D. Tex. 2020) (Isgur, J.) ("[Rule] 9(b) applies whenever fraud is an essential element of the claim. In an actual fraudulent transfer case, fraud is an essential element."); *Schmidt v. Meridian Cap. Found. (In re Black Elk Energy Offshore Operations, LLC)*, No. 15-34287, 2019 WL 3889761, *3 (Bankr. S.D. Tex. Aug. 16, 2019) (Isgur, J.). Rule 9(b) requires factual allegations of the "time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what that person obtained thereby." *Life Partners Creditors' Tr.*, 926 F.3d at 117. "In other words, to properly allege fraud under Rule 9(b), the plaintiff must plead the who, what, when, where, and why as to the fraudulent conduct." *Id*.

The Complaint fails to allege intent as Rule 9(b) requires. Actual fraudulent transfer requires that (i) a transfer is made with (ii) actual intent to hinder, delay, or defraud any entity to which (iii) the debtor was or became indebted. 11 U.S.C. § 548(a)(1); Tex. Bus. & Com. Code Ann. § 24.005(a)(1); *see also In re MarketXT Holdings Corp*., 376 B.R. 390, 402 (Bankr. S.D.N.Y. 2007). At no point does the Complaint allege any intent by High Mesa, Ellis, or Chappy Energy to hinder, delay, or defraud creditors. Counts 3 through 6 of the Complaint focus on the Rescue Financing Repayments to Ellis and Chappy Energy on or about October 15, 2019 and December 24, 2019. Compl. ¶ 97 (iii), (iv), (vii), (viii). But the Complaint also alleges that: (i) HMI executed the Rescue Financing Note; (ii) HMI's subsidiaries—including HMH LP, AM Idaho, and HMS— guaranteed payment of HMI's obligations under the Rescue Financing Note; and (iii) HMI, HMH

LP, AM Idaho, and HMS also granted security interests in the assets these entities owned. *Id.* ¶¶ 55, 58, 59. The Complaint does not allege that ***any*** of these obligations were themselves fraudulent transfers. *See id.* ¶ 97 (listing the "Fraudulent Transfers"). Thus, when High Mesa made the Rescue Financing Repayments, those amounts (and more) were ***already owed*** to Ellis and Chappy Energy under the terms of a written promissory note, with subsidiaries guaranties and security interests as well. *Id.* ¶¶ 55, 58, 59.

The Complaint does not allege any subsequent facts suggesting that High Mesa made these payments with fraudulent intent of any kind. Instead, the factual allegations merely show that High Mesa owed this money to Ellis and Chappy Energy and paid it after agreeing to sell assets that resulted in cash proceeds. *Id.* ¶¶ 64–65. Nothing about these facts remotely suggests any actual intent to hinder, delay, or defraud creditors.

Moreover, the Trustee cannot meet Rule 9(b) merely by alleging self-dealing. Although Ellis and Chappy Energy were undoubtedly insiders of High Mesa at the time of this transfer, HMI's disinterested directors all approved the Rescue Financing Repayments, knowing Ellis and Chappy Energy would benefit from them. *See* Compl. ¶ 81. Nor does the Complaint suggest that any badges of fraud were present beyond either its allegations that the transferees were insiders or, potentially, its claims of insolvency. *See* Tex. Bus. & Com. Code § 24.005(b) (listing badges of fraud). Accordingly, the Complaint fails to specifically allege intent, as Rule 9(b) requires. Those two badges, standing alone, are not enough to transform an allegedly preferential payment into a fraudulent transfer. Because the Trustee has failed to specifically allege intent as Rule 9(b) requires, the Court should dismiss Counts 3 and 5 of the Complaint.

**E.    Texas law forecloses the unjust enrichment claim in Count 7 of the Complaint.**

The Court should dismiss Count 7 of the Complaint because under Texas law, a plaintiff cannot state a claim for unjust enrichment based on a payment made to satisfy a contractual

obligation. Instead, unjust enrichment is an equitable remedy that is unavailable when a contract is in place between the parties. *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex. App.—Texarkana 2013, pet. denied) ("The unjust enrichment doctrine applies the principles of restitution to disputes which for one reason or another ***are not governed by a contract*** between the contending parties.'") (emphasis added) (quoting *Lone Star Steel Co. v. Scott*, 759 S.W.2d 144, 154 (Tex. App.—Texarkana 1988, writ denied)). In fact, this Court has previously recognized that an unjust enrichment claim was proper specifically because the plaintiff was ***not*** seeking recovery "based on a contract or promissory notes." *Smith v. Jimenez (In re IFS Fin. Corp.)*, Nos. 02-39553, 04-03777, 2007 WL 4244115, at *7 (Bankr. S.D. Tex. 2007) (Isgur, J.). Based on the allegations in the Complaint, there is no doubt whatsoever that the Rescue Financing Repayments were paid based on a promissory note. Compl. ¶ 55. Count 7 of the Complaint should therefore be dismissed for failure to state a claim.

**F.      No claims exist for the Court to disallow under Count 8 of the Complaint.**

Finally, the Court should dismiss Count 8 of the Complaint, which seeks disallowance of claims, because neither Ellis nor Chappy Energy has filed any claims in this case. Federal Rule of Evidence 201(c)(1) authorizes the Court to take judicial notice of the claims register in the above-captioned bankruptcy case, and that register includes no claims filed by Ellis or Chappy Energy. Fed. R. Evid. 201(c)(1); *see also Reneker v. Offill*, 2010 WL 1541350, at *5 (N.D. Tex. Apr. 19, 2010). Accordingly, Count 8 should be dismissed, although Ellis and Chappy Energy reserve their section 502(d) and 502(h) rights to file claims in the unlikely event that the Trustee ultimately succeeds in avoiding any transfers to them.

**G.      Amendment of the Complaint would be futile.**

For the same reasons discussed in the Hostettler Motion, an opportunity to amend the Complaint would be futile. *See* Hostettler Motion § III. Accordingly, Chappelle, Ellis, and Chappy

Energy request that the Court dismiss the Complaint with prejudice.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice and grant such other and further relief as the Court deems just and proper.

Dated: March 25, 2022                    Respectfully submitted,

                                                      **WINSTON & STRAWN LLP**

                                                      */s/ Katherine A. Preston*
Walter M. Berger
TX Bar No. 00798063
Katherine A. Preston
TX Bar No. 24088255
800 Capitol Street, Suite 2400
Houston, TX 77002-2925
Tel.: (713) 615-2699
Fax: (713) 651-2700
cberger@winston.com
kpreston@winston.com

David Neier (*pro hac vice* to be filed)
200 Park Avenue
New York, NY 10166-4193
Tel.: (212) 294-6700
Fax: (212) 294-4700
dneier@winston.com

*Counsel for Harlan H. Chappelle, Michael E. Ellis, and Chappy Energy, LLC*

## CERTIFICATE OF SERVICE

I certify that on March 25, 2022, a copy of the foregoing was served on all counsel of record via ECF.

                                                      */s/ Katherine A. Preston*
                                                      Katherine A. Preston